CLARENCE A. BLACK ET AL. v. MARTHA DAWSON ET AL. GARNISHEES OF GEORGE E. OSMUN AND ROBERT E. DAWSON.

*Garnishment—Fraudulent conveyances—Assignment for benefit of creditors.*

1. Only such points as counsel make and rely upon for reversal in their original brief will be considered by the Court in disposing of the case.

   So *held*, where the appellants' original brief presented three questions for review, and in a supplemental brief forty-five points were made upon which a reversal was claimed, which practice is held inadmissible under Supreme Court Rule No. 59, as amended.

2. After the commencement of proceedings in garnishment involving the validity of chattel mortgages given by the principal defendants, who had made a general assignment for the benefit of their creditors, the plaintiffs proved their claim in the assignment proceeding, which fact is held not to estop them from prosecuting their attack upon the chattel mortgages; citing *Stove Works v. Osmun*, 74 Mich. 7.

3. Two garnishee defendants claimed to hold a stock of goods belonging to the principal debtors under *separate* chattel mortgages, which were assailed as fraudulent. The mortgages were executed and filed on the same day, and priority of lien was not claimed by either mortgagee. The goods had been reduced to possession by the mortgagees, who had committed the *actual* possession of the same to an agent appointed by both. And it is held that the garnishment proceedings were properly prosecuted against the mortgagees *jointly*.

| 82 | 485 |
| 92 | 417 |
| 82 | 485 |
| 111 | 193 |
| 82 | 485 |
| f122 | 98 |
| 82 | 485 |
| 139 | ¹317 |

Error to Wayne.    (Brevoort, J.)    Argued June 26, 1890. Decided October 10, 1890.

Garnishment.    Garnishee defendants Dawson bring error.    Affirmed.    The facts are stated in the opinion.

*Albert J. Chapman,* for appellants, contended:

1. After proving their claim in the assignment proceeding, the plaintiffs placed themselves among the other creditors of the principal debtors, and could not prosecute their attack against the chattel mortgages. This was exclusively the duty of the assignee; citing *Maynard v. Hoskins,* 9 Mich. 485; *Tyler v. Peatt,* 30 Id. 63; *Griswold v. Fuller,* 33 Id. 268; *Root v. Potter,* 59 Id. 498; *Angell v. Pickard,* 61 Id. 563; *Sweetzer v. Higby,* 63 Id. 23; *Johnson v. Stellwagen,* 67 Id. 18; *Brass & Copper Co. v. Babbitt,* 74 N. Y. 403, which case is decisive of this point.

2. No contract relations are shown between the garnishee defendants, and on this objection being made plaintiffs should have been directed to first establish the existence of such relation, and in the absence of such showing a verdict should have been directed for the garnishee defendants; citing *Ball v. Young,* 52 Mich. 476; *Lyon v. Ballentine,* 63 Id. 97.

3. Separate proceedings may be prosecuted under How. Stat. § 8092, against several garnishee defendants, unconnected in interest, under which statute the disclosures and all subsequent proceedings are several.

*Marston, Cowles & Jerome,* for plaintiffs, contended for doctrine stated in the opinion.

LONG, J.    But three questions are discussed in the principal brief of the counsel for the garnishee defendants.

On the oral argument of the case in this Court it was noticed that the original brief of the garnishee defendants' counsel, containing only eight pages, presented but three questions, while in a supplemental brief, which contained forty pages, he presented 45 points, which counsel relies upon for reversal of the case. Counsel was advised at the opening of the argument in this Court that only

such points as were treated in his original brief would be considered by this Court in disposing of the case. The attention of counsel was called to Supreme Court Rule No. 59, as amended to take effect July 1, 1888, and printed in full in 62 Mich. iv. That rule was adopted to be observed and followed by counsel in bringing cases into this Court. It will at least be followed and enforced by this Court.

The history of this case is stated by counsel for the plaintiffs in their brief, and about which there does not seem to be much controversy.

In November, 1886, Osmun & Dawson, the principal defendants, went into the hardware business in Detroit, and from that time up to February, 1888, bought goods of the plaintiffs. Evidence was given on the trial tending to show that the firm had given two notes,—one for $2,400 to Charles Dawson, father of defendant Robert E. Dawson, and one for the same amount to Mr. Pearsall, grandfather of the defendant George E. Osmun, and father of defendant Dawson's wife. The defendant Osmun is a son of Mrs. Dawson by a former marriage. On January 14, 1888, Mr. Pearsall died, and Mrs. Dawson was, on January 20 following, appointed special administratrix. On the 25th of the same month two chattel mortgages were given by the firm; the one of $2,400 to the said Charles Dawson, and another, of like amount, to Mrs. Dawson. Defendants introduced evidence tending to show that these two mortgages were given to take the place of a previous $4,800 chattel mortgage, which had never been filed. On February 2, 1888, these two mortgages were filed in the office of the city clerk, and on the same day the mortgagees took possession of the property covered thereby by their agent, the defendant Riddle, and began foreclosure. The notes these mortgages were given to secure did not become due until April 30, 1888. On Feb-

ruary 3, 1888, garnishment proceedings were begun by the plaintiffs against Mrs. Dawson, George Pearsall, and Mr. Riddle. On February 4, the plaintiffs, finding that Mr. Pearsall was dead, abandoned proceedings under the first affidavit for garnishment, and made a new affidavit, upon which new process issued, in which Mrs. Dawson and Charles Dawson were made garnishee defendants. The subsequent pleadings were entitled in the new proceedings.

On February 4, 1888, a common-law assignment was made by Osmun & Dawson for the benefit of creditors to Mr. Riddle. On February 21, 1888, all the goods were sold to Mrs. Dawson at an auction sale held by the mortgagees for a little more than the two mortgages. Mr. Riddle, Mrs. Dawson, Charles Dawson, and their attorneys were present at this sale, and Charles Dawson was one of the bidders at the sale. On the trial of the present case the plaintiffs attacked these two mortgages as fraudulent in that they were given to hinder, delay, and defraud the creditors of the mortgagors, and that the possession and sale of the mortgaged property thereunder was for the purpose of hindering, delaying, and defrauding such creditors. It appeared also that the plaintiffs made and filed proof of their claim in the assignment proceedings wherein Mr. Riddle was made assignee. It appears from the record that at the close of the testimony the attorney for the garnishee defendants proposed in writing five questions to be submitted to the jury for special findings. These the court below submitted, and the jury found thereon as follows:

"1. Was the debt of the defendants Osmun & Dawson, of $2,400, to the First National Bank of Pontiac, a *bona fide* debt?

"*A.* Yes.

"2. Did Charles Dawson indorse the note of $2,400 given for that debt in good faith?

"*A.* Yes.

"3. Did he take the chattel mortgage in question to secure him for indorsing said note in good faith?

"*A*. No.

"4. Was the debt of Osmun & Dawson to the estate of George Pearsall, of $2,400, as indorser to the First National Bank of Pontiac as principal creditor for that $2,400, a *bona fide* debt?

"*A*. Yes.

"5. Did Martha Dawson, as administratrix of the estate of George Pearsall, take the chattel mortgage to secure her and her bondsmen for liability in good faith?

"*A*. No."

The jury rendered a verdict for the plaintiffs for the value of the goods, found to be of the amount stated in the inventory in the assignment of Osmun & Dawson to Riddle, against the garnishee defendants Charles Dawson and Martha Dawson, and as against Riddle no cause of action.

The first point made by the counsel for garnishee defendants, as stated in the original brief, is that, after proving their claim in the assignment proceedings, the plaintiffs placed themselves among the other creditors of the principal debtors, and could not prosecute their attack against the chattel mortgages; that that was exclusively the duty of the assignee. The fact, however, that the plaintiffs proved their claim in the assignment proceedings, does not estop them in this. This proposition needs no discussion. The doctrine was fully settled in *Detroit Stove Works v. Osmun,* 74 Mich. 7 (41 N. W. Rep. 845); *Parsons v. Clark,* 59 Id. 414 (26 N. W. Rep. 656); *Barnum Wire & Iron Works v. Circuit Judge,* Id. 272 (26 N. W. Rep. 802).

The second point made by counsel for the garnishee defendants is that there were two affidavits for garnishment. The first affidavit was made on February 3, 1888, and the writ of garnishment issued against Martha Dawson, George Pearsall, and Nelson K. Riddle. On the fol-

lowing day, February 4, the plaintiffs filed a new affidavit, and took a second writ of garnishment against Charles Dawson and Martha Dawson, setting forth in this second affidavit that "Martha Dawson and Charles Dawson have property, money, goods, chattels, credits, and effects in their hands, or under their control, belonging to George E. Osmun and Robert E. Dawson," the principal defendants. The first proceedings in garnishment being abandoned, the parties proceeded under their second writ, and the trial of the present case before the jury was under this second writ.

It is insisted and claimed, however, by counsel, that there is nothing in the case showing any privity of contract between Martha and Charles Dawson, and that no joint action in garnishment could be maintained against them. We think there is no force in this contention. While it is true that these parties were claiming to hold under two separate and distinct chattel mortgages, yet they acted jointly in taking possession of the property thereunder, and the possession was held by Mr. Riddle as agent of both mortgagees. Their possession was joint. Both mortgages were executed at the same time, and filed at the same time, each covering the entire stock of goods. There is no claim that one mortgage had priority over the other. If the mortgages were valid, the plaintiffs had no right to recover. If they were fraudulent and void as to creditors, as the jury found them to be, then the garnishee defendants, under the facts shown in this case, cannot be heard to claim that they were acting independently of each other. No assignment for the benefit of creditors had yet been made, but Riddle went into possession of and was holding the property for the joint benefit of Martha and Charles Dawson, and the property was subsequently sold to and bid in by Martha Dawson for more than the amount of the two mortgages.

This case is clearly distinguishable from the case of *Lyon v. Ballentine*, 63 Mich. 97 (29 N. W. Rep. 83). In that case it was not claimed or pretended that there was any joint actual possession of the property. In the present case, while the property was seized and taken upon the two mortgages, or rather turned over by the mortgagors to the two mortgagees, yet the property was held as a whole by the agent appointed by the two. It is difficult to see how, under such circumstances, several actions could have been brought or maintained against Charles and Martha Dawson for having in their separate custody and under their separate control this stock of goods, or any particular part or parcel of it.

The third and only remaining point discussed by counsel in his original brief relates to the testimony of Mr. Clarence A. Black, one of the plaintiffs in this cause, and the ruling of the court thereon. We have carefully read the record, and the question sought to be raised is one purely of fact. The testimony was admissible, and the court properly admitted it. We see nothing in the testimony which calls for the statement contained in the brief of counsel. If the statement was warranted under any circumstances, it certainly can have no weight in this Court. We shall not discuss it.

The judgment must be affirmed, with costs.

The other Justices concurred.